GULF COAL AND COKE CO., Appellant,

v. BINGAMAN

(April 25, 1927. Opinion and Decree.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Landlord and Tenant Par. 54.**

The lessor is not liable for property of the lessee tortiously removed from the leased premises by parties not identified.

Appeal from First City Court, Division "A". Hon. W. Alexander Bahns, Judge.

Action by Gulf Coal and Coke Company, Inc., against Soloman C. Bingaman.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Legier, McEnerny & Waguespack, Chas. Danna, of New Orleans, attorneys for plaintiff, appellant.

Marcus & Corkern, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J. This is a damage suit for the illegal removal of plaintiff's signs from defendant's property.

The plaintiff alleged that, some time prior to July, 1925, he rented a space on the gallery of the premises, corner of Howard avenue and Baronne street, from the owner thereof, George Jacobs, for the purpose of displaying his sign, for the price of $15.00 per month; that during the month of July the property was sold to a purchaser represented by Matthews Brothers as agents, who informed plaintiff that he must pay the rent to them from July 1, 1925; that plaintiff notified Matthews Brothers that it would not renew the lease unless it was assured of a six months' lease, as their sign needed repainting; that Matthews Brothers notified plaintiff to repaint the sign and to replace it, reserving the right to place additional signs on the said gallery; that accordingly plaintiff had his sign repainted at a cost of $35.00, and sent a check of $15.00 to Matthews Brothers in payment of the rent for the month of July, which they collected; that on August 27, 1925, plaintiff visited the property at the corner of Howard avenue and Baronne and noticed that its sign had been removed; that it notified Matthews Brothers, requesting them to replace the sign, which they have failed to do; that at the time plaintiff made the verbal lease with Matthews Brothers and at the time the sign was removed, the owner of the building was Soloman C. Bingaman, and that Matthews Brothers were acting as his agents; that plaintiff could not locate the sign, nor make the owner or his agents aforesaid replace it, nor could plaintiff recover it; that the value of said sign is $108.79; that the unlawful removal of said sign was caused by the owner or by his agents or by his or their authority; that the said sign was removed notwithstanding the warranty of the owner and of his agents that plaintiff would be undisturbed in its possession. Plaintiff prays for $193.79 damages.

Defendant pleaded that "plaintiff's action is barred by prescription"; that his petition disclosed no right or cause of action, and a general denial of each and every paragraph of plaintiff's petition.

There was judgment "dismissing plaintiff's suit as in case of nonsuit", and he has appealed.

It is sufficiently shown that plaintiff rented from Jacobs the right to put up his sign on the gallery of the property, corner of Howard avenue and Baronne street; that the defendant, Bingaman, subsequently purchased the property through Matthews Brothers, his agents, and that they agreed to continue renting the gallery to the plaintiff, and that they received, as agents of defendant, from the plaintiff for rent of the gallery a $15.00 check, which they collected and paid over the proceeds to the defendant.

The removal of the sign is also established. The burden, however, is upon plaintiff to prove that the sign was removed, as it has been alleged, by defendant, or by someone with his authority, or for whose acts he is responsible.

There is no evidence to prove by whom the sign was removed, nor that it was removed by defendant, or by Matthews Brothers, or by his or their authority. On the contrary, the plaintiff testified as follows:

"Q. You don't know who took the sign?
"A. No.
"Q. Do you mean to accuse Mr. Bingaman of taking this sign?
"A. No, sir.
"Q. You do not know that they (Matthews Brothers) removed it?
"A. No, I don't."

Benjamin Matthews testifies:

"Q. Did you order anyone to remove this sign?
"A. No.
"Q. Anyone in your employ?
"A. Not that I know of.
"Q. If anyone removed it, it was done without your knowledge or consent?
"A. Absolutely.
"Q. As far as you know you did not authorize anyone to remove it?
"A. No.
"Q. Do you know if Mr. Bingaman did?
"A. As far as I know he did not.
"Q. Did you authorize anybody to tear down that sign?

"A. No, sir."

The defendant, Bingaman, testified:

"Q. Did you ever, at any time, authorize or employ others to remove a sign of this coal company?
"A. No, sir, I did not.
"Q. Did you authorize the removal of the gallery?
"A. No, sir.
"Q. In other words you don't know anything about the destruction of any sign?
"A. No, sir."

Mr. Jeff D. Matthews testified:

"Q. Were there any repairs or construction work of any kind on these premises or gallery on the corner of Baronne and Howard avenue during those two months?
"A. There were repairs made there; I don't know what months.
"Q. Were the repairs made under your direction?
"A. No, sir.
"Q. Under whose direction?
"A. City Architect and Mr. Russo.
"Q. Was Mr. Russo an authorized tenant of Mr. Bingaman?
"A. Yes.
"Q. But there were certain alterations or repairs or destruction of this gallery during those two months?
"A. I think so.
"Q. Made by Mr. Russo?
"A. Yes.
"Q. Is it not a fact that you spoke to some workman or contractor or subcontractor not to remove the sign, situated in this gallery during the course of these repairs?
"A. Yes.
"Q. Whom did you tell that to?
"A. Russo.
"Q. And Russo was one of the tenants of Mr. Bingaman?
"A. Yes, Mr. Russo called me up, and told me the Sewerage and Water Board were there and wanted to cut off the sidewalk, and it was necessary to remove the posts, and he also said Mr. Muntz wanted the gallery removed. I told him I could not give that authority to him because other people's property was up there and he could not move it, and whether he did it or not I don't know. I did not see it moved.
"Q. You did not give anybody authority to move it?

"A. No, to the contrary."

It will be seen, therefore, that there is no proof establishing who removed the sign, and that there is proof positive that neither the defendant nor his two agents authorized anyone to remove it, but, on the contrary, that they prohibited it.

But the plaintiff relies upon Article C. C. 2703 (2673), reading as follows:

"The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance."

Plaintiff's theory is that Russo removed the sign; that Russo was defendant's tenant with certain rights to the premises"; therefore, defendant is liable for the acts of his tenant, by virtue of this article.

This argument falls for the reason that there is no evidence to prove that Russo removed the sign. It may have been removed by the Sewerage and Water Board; Muntz, the engineer, wanted the sign removed. Why did not the plaintiff summon Muntz and Russo and thus ascertain who did it?

In the second place there is no evidence that Russo had been granted any right at all upon the gallery, or that he claimed any. It is only against those "claiming any rights to the premises" that the lessor's warranty extends. As to all others the lessor's right of action is "against the person occasioning such disturbance".

The acts referred to in C. C. 2703 are the tortious acts of third persons.

"A lessee is accorded by law a direct action himself against the author of such disturbances, and he should avail himself of that right of action for protection and relief. Failing to do so, he cannot throw upon his lessor the injurious results flowing from such disturbances and make him liable for the same through "an action for damages".

Reynolds vs. Egan, 123 La. 294, 48 South. 940; C. N. 1725; 4 Dalloz Codes Ann., p. 360, note 5; 30 Dalloz, S. 226-238.

But if the defendant is liable at all it is for the damage he suffered by the illegal removal of his sign; but certainly not for the value of the sign which the tenant Russo may have appropriated. This is a tortious act of his tenant for which no law makes the lessor liable.

The case of Lazarne Levy vs. Madden, 116 La. 374, 40 South. 766, presented the question of the liability of the lessor in cases where necessary repairs are made to the leased premises.

The case of Lazarne Levy vs. Madden, La. 749, 103 South. 30, the disturbance was caused by one of the tenants to the detriment of the others. The defendant lessee complained that the lessor did not protect him in the peaceable enjoyment of the property leased owing to the disturbance caused by the co-lessee. In this case the lessee is attempting to hold the lessor liable because someone has tortiously deprived him, the lessee, of the possession and enjoyment of some personal property belonging to the lessee, and by him placed upon the leased premises. The two cases are entirely different.