This is a suit by a landlord against his tenants for the sum of $240, claimed as rent, and for attorney's fees stipulated under the contract of lease.
Plaintiff avers that he leased, as a residence, for the term of one year, one of the two upper apartments of a two-story "four-plex" dwelling to the defendants, Mr. and Mrs. Rogers; that the lease contract called for a monthly rental of $40, payable semi-monthly, on the 10th and 25th of each month, and that rent notes, aggregating the amount of rental for the entire lease period, were executed; that defendants occupied the premises and paid the monthly rental from November 16, 1940, to April 10, 1941, when, in violation of the lease contract, they vacated and abandoned the premises and removed their belongings. At the request of plaintiff a writ of provisional seizure of defendants' effects issued, but, upon defendants furnishing bond, the writ was dissolved.
Under the rules of the First City Court, defendants filed with their answer exceptions of want of citation, no right and no cause of action, and a plea of estoppel. The exceptions of want of citation and of no right and no cause of action were abandoned and withdrawn, save that of no right and no cause of action filed on behalf of Mrs. Rogers. The plea of estoppel, which is clearly discredited by the record, has not been urged before us and we are justified in considering it as having been abandoned.
For answer defendants admit the execution of the lease, for which rent is claimed, and that rent notes aggregating the sum demanded are unpaid and in possession of plaintiff. Their defense is based upon Article 2692 of the Revised Civil Code, to the effect that the lessor is bound to "maintain the thing in a condition such as to serve for the use for which it is hired and to cause the lessee to be in peaceable possession of the thing during the continuance of the lease". They aver that they have been "annoyed, harassed and abused" by the tenants of the lower floor; that this disturbance grew out of the lower floor tenant having "borrowed and broke electric light fixtures" belonging to defendants, and who also "left burning electric lights in respondent's premises, and who blocked and obstructed and prevented the use of the driveway and garage assigned to respondents". They further aver that frequent complaints were made to plaintiff without any relief being obtained, and that, as a result thereof, they abandoned and vacated the premises on April 10, 1941.
The lower court rendered judgment in favor of plaintiff and defendants have appealed.
The exception of no right or no cause of action filed on behalf of Mrs. Rogers, and overruled by the court below, is strenuously urged before us. It is contended that Mrs. Rogers, a married woman, cannot be held responsible on a *Page 172 
debt contracted during her marriage, for the benefit of the community, in the absence of an allegation that the debt inured to her separate benefit or that she was separate in property from her husband, or engaged in business as a public merchant.
The fallacy of this contention is made evident by the recent pronouncements of the Supreme Court. As we have said, the lease contract and notes bear the signature of Mrs. Rogers, as well as her husband's, so that she has bound herself personally thereon, if it was legal for her to do so.
It must be conceded that the debt here contracted for was the debt of the husband, as head and master of the community, for, under Article 120 of the Revised Civil Code, the husband is bound to furnish his wife with "whatever is required for the convenience of life, in proportion to his means and condition". Feibleman Co. v. O'Rourke, 12 La.App. 116, 124 So. 620; Jones v. Davis, La.App., 155 So. 269.
By the express terms of Act No. 132 of 1926 (re-enacted by Act No. 283 of 1928), a married woman is expressly authorized "to bind and obligate herself personally or as surety for her husband or any other person."
In the case of Mathews Bros. v. Bernius, 169 La. 1069, 1075,126 So. 556, 557, after quoting Act No. 132 of 1926, it was said:
"It is obvious from section 1 of this act that a married woman has the right, not only to bind herself and her separate property for her benefit or for the benefit of a third person, without the authorization of her husband, but also to bind herself and her separate property for his benefit. As she may bind herself for the benefit of her husband, who is by law the head and master of the community, and responsible for its debts, by reasonable implication she may bind herself for a debt of the community, for such a debt is the husband's debt."
See, also, Howard v. Cardella, 171 La. 921, 132 So. 501, and United Life Accident Insurance Company v. Haley, 178 La. 63,150 So. 833.
Counsel for Mrs. Rogers argues that since her signature was physically stricken from the rent notes at the time of their confection, she was relieved from responsibility thereon.
It is shown that the lease negotiations were conducted between Mrs. Rogers and Mrs. Veazey, the latter representing her husband. The lease contract and rent notes were first signed by Mrs. Rogers. When the contract and notes were thereafter presented to Mr. Rogers for his signature by Mrs. Veazey, it is admitted that he drew a line across the signature of his wife on the notes, then notifying Mrs. Veazey that he did not want his wife to be responsible for any debt which he alone was called upon to pay. It is not denied that Mrs. Veazey made no objection or protest, but it appears that she accepted the notes under the stated circumstances. Mrs. Rogers' signature on the contract of lease, however, was untouched.
Defendants' counsel contends that since the signature of Mrs. Rogers on the rent notes was physically stricken therefrom, the fact that her genuine signature appears unmarred on the lease contract does not of itself create liability. In this defendants are in error. Liability is sought to be attached by virtue and as a result of the lease contract itself. It is the contract from which springs the obligations of the contracting parties. It is the source and measure of the rights and privileges to be enjoyed.
It is well settled that a promissory note is merely evidence of an indebtedness, which exists independently of the note. Armato v. Ross, La.App., 170 So. 400; Lerner v. Bischoff, La.App., 193 So. 236. However, this principle of law is inapplicable to the facts which are presented here. As stated, plaintiff was represented by his wife, Mrs. Veazey, she alone having handled all matters in connection with the lease contract. It appears that she follows the real estate business as a trade. When the rent notes bearing the signature of Mrs. Rogers were presented to Mr. Rogers for his signature, not only was Mrs. Veazey definitely informed that Mrs. Rogers would not be responsible under the notes and contract, but her signature was stricken from the notes by Mr. Rogers in the presence of Mrs. Veazey, and this prior to appending his signature. Mrs. Veazey, as the accredited agent of plaintiff, accepted the rent notes as thus executed. In so doing she voluntarily relieved Mrs. Rogers of all liability thereon, consenting to look to no one but Mr. Rogers for their payment as they matured. The failure to have stricken Mrs. Rogers' signature from the contract of lease was, undoubtedly, an oversight on the part of the parties, their attention at that time being chiefly concerned with the rent notes, which, to a *Page 173 
layman, is the "piece de resistance" in such matters.
We are drawn to the conclusion that plaintiff, in view of the foregoing facts, cannot now be heard to urge his right of recovery against Mrs. Rogers. Therefore, under the facts developed, there should have been no judgment rendered against Mrs. Rogers.
Turning now to the defense on the merits, we observe that in the case of Keenan v. Flanigan, No. 8578 of the docket of this court (unreported [see Louisiana and Southern Digest]), decided March 24, 1924, the holding of which was subsequently approved by the Supreme Court in 157 La. 749, 750, 103 So. 30, 38 A.L.R. 248, we held as follows:
"The obligation of the lessor as imposed by Art. 2692 R.C.C. to `maintain the thing in a condition such as to serve for the use for which it is hired' and `to cause the lessee to be in peaceable possession of the thing during the continuance of the lease' refers to moral as well as physical condition and to moral as well as physical peace.
"The word `premises' as used in Art. 2703 R.C.C., which declares that `the lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises' includes the lower as well as the upper floor of a dwelling-house, consequently the lessor is not released from responsibility for disturbances created by occupants of a lower floor of a two-story dwelling affecting his tenants, the occupants of the upper floor."
We have given recognition to the soundness of the rule that it is not every disturbance of moral conditions that justifies a tenant in refusing to pay his rent. We also recognize the rule that physical disturbance of a tenant in the peaceable possession of leased premises should appear to be not alone of a serious nature, but of equal certainty, in order to warrant an abrogation of the lease.
The evidence before us does not in the slightest sustain the charges of harassment or disturbance of defendants in the peaceable enjoyment of the leased premises. The alleged disturbance simmers down to the obstructing and blocking of the driveway leading to the garage in the rear of the premises. Certainly the borrowing of electric fixtures by others and their destruction while in use, and the turning on by unknown persons of lights in defendants' unlocked basement as a predicate for abrogation of a lease, are matters so trivial as to amount to an absurdity in the eyes of the law.
It is shown that the driveway in question and the garage it served was a community driveway and garage, given over to the use of defendants and their lower floor co-tenants, of whom they complain. Both owned automobiles. It appears that on several occasions the car of the lower floor tenant was parked on the driveway, and, on other occasions, that of defendants was so parked, preventing entry to or exit from the garage. It is also shown that another driveway paralled the driveway of the leased premises and that, whenever the latter was obstructed, entry to or exit from the garage could be made by using this adjoining driveway, the use of which the owner had freely consented to.
The few occasions when defendants found the driveway blocked caused them to become incensed and resentful to such an extent that angry words were exchanged. It is shown, however, that on these three or four occasions, the obstruction was cleared without delay. On the other hand, it is shown that though the co-tenant complained of having equal enjoyment and use of the driveway, he was always disposed to and did use the adjoining driveway on the occasions that he found the defendants' car obstructing the passage. Apparently, defendants' abandonment of the leased premises was provoked by reasons other than those urged before us. The fact is that defendants were able to find another apartment with equal conveniences, and, as the record shows, at a lesser rental, and it is not unreasonable to assume that this was their main reason for abandoning plaintiff's apartment.
To say the most, conceding that the community driveway was, on a few occasions, blocked or obstructed, preventing its unimpeded use whenever the will or pleasure of defendants asserted itself, such occurrences amounted simply to a mere annoyance, while to others it probably would have been unnoticed, more particularly when the offending co-tenant, as is the case here, readily remedied the situation complained of. It was not such a denial of privacy or quiet enjoyment as to render the premises less fit for the purposes for which they had been leased and thereby result in such a disturbance of peaceable possession as to warrant abrogation of the contract of lease. *Page 174 
We are firmly convinced that defendant, Mr. Rogers, under the existing facts, was not justified in vacating the leased premises and refusing to pay the monthly rental under the lease contract.
For the reasons assigned, the judgment appealed from, insofar as it runs in favor of plaintiff and against Mrs. Rogers, defendant, is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff's suit as against Mrs. Rogers be and the same is hereby dismissed.
In all other respects, the judgment appealed from is affirmed.
Reversed in part; affirmed in part.