290 So.2d 423 (1974)
EQUILEASE CORPORATION
v.
Clyde HILL d/b/a Clyde's Shell Service.
No. 6046.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
Rehearing Denied March 8, 1974.
*424 Favret, Newman, Duggins & Drolla, F. Joseph Drolla, Jr., New Orleans, for plaintiff-appellant.
Alvin Rudy Eason, Metairie, for defendant-appellee.
Before GULOTTA, SCHOTT and MORIAL, JJ.
GULOTTA, Judge.
We are called upon to determine if a waiver of warranty was effected by a lessee on leased movable property.
On November 11, 1968,[1] plaintiff leased to defendant for a period of 36 months an engine tester and wheel balancer for the sum of $129.22 per month. The lessee made the first payment of $258.44 to lessor under the term of the lease. The movables subject to the lease were purchased by plaintiff Equilease from Louisiana Equipment Sales Company. Defendant defaulted in payment after the initial payment, and plaintiff filed suit for the balance due under the terms of the lease, the sum of $4,425.86, together with interest and attorney's fees.
Clyde Hill, in answer, stated that the movables were not suitable for the use for which they were leased and sought in reconvention reimbursement of the original payment to lessor. He then third partied the Louisiana Equipment Sales Company, the seller, seeking reimbursement for any amounts for which he, lessee, may be cast in judgment. From a judgment dismissing the suit and granting a judgment to defendant in reconvention, plaintiff appeals. No appeal was taken by defendant from the dismissal of the third-party complaint. We affirm.
Plaintiff contends while the trial judge did not assign reasons for judgment, defendant could prevail only if the waiver of warranty contained in the lease agreement is not valid. It is plaintiff's position that a valid waiver was made when the lease agreement was entered into.
The lease provides:
"* * * 2. (A) LESSEE HAS SELECTED BOTH (1) THE EQUIPMENT AND (2) THE ABOVE SUPPLIER FROM WHOM LESSOR IS TO PURCHASE THE EQUIPMENT. LESSOR MAKES NO WARRANTY EXPRESS OR IMPLIED AS TO ANY MATTER WHATSOEVER, INCLUDING THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE, AND AS TO LESSOR, LESSEE LEASES THE EQUIPMENT `AS IS.' (B) IF THE EQUIPMENT IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY SUPPLIER OR IS UNSATISFACTORY FOR ANY REASON, LESSEE SHALL MAKE ANY CLAIM ON ACCOUNT THEREOF SOLELY AGAINST SUPPLIER AND SHALL, NEVERTHELESS, PAY LESSOR ALL RENT PAYABLE UNDER THIS LEASE, LESSEE HEREBY WAIVING ANY SUCH CLAIMS AS AGAINST LESSOR. * * *"
No testimony was taken, and the matter was submitted on a stipulation of facts which stated that defendant would testify as follows:
"(1) That the leased equipment would not operate as promised by third party defendants in that the Marquette Engine Tester would not service all vehicles as warranted and the bear wheel balancer was not usable at all since it was a three *425 phase electrical unit and the defendant had only single phase electrical service in his place of business.
"(2) That the third party defendants had warranted to the defendant that both pieces of equipment would suit his needs and purposes precisely which in fact the equipment would not do.
"(3) That the defendant tendered the equipment back to the third party defendants who refused to accept it."
The statutory authority for the lessor's warranty is contained in LSA-C.C. art. 2695 which reads as follows:
"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
The warranty here, if any, is not a warranty against vice or defect but a warranty by the lessor that the movables would be suitable for the use intended by the lessee.
In Mosher v. Burglass, 170 So. 416 (Orl.App.1936),[2] the court, in discussing the liability of the lessor relating to the use intended for the property, stated:
"It is not necessary that we cite any of the numerous authorities which hold that, in this state, there is written by law into every contract of lease a warranty that the leased property contains no defects and that the lessee and all other persons lawfully upon the premises may subject any part thereof to any of the uses for which the property is intended."
Whether or not this warranty applies to movables as well as immovables was specifically discussed in Lyons v. Jahncke Service, Inc., 125 So.2d 619 (La.App. 1st Cir. 1960), at page 626. There, the court stated:
"That the provisions of Articles 2692-2695, inclusive, of our LSA-Civil Code are applicable to the lease or bailment of movables is hardly open to question or argument. Nothing in said articles gives the slightest intention their scope is restricted or limited solely to immovables. On the contrary, we believe the language employed therein sufficiently broad to indicate legislative intent to encompass all contracts of lease, hire, or bailment, chattels, as well as real property included." See also Graham v. Nelson, 148 So. 445 (La.App. 1st Cir. 1933).
Applying Mosher and Lyons to the instant case, we conclude that the lessor's warranty extends to movables and includes a warranty for use which the lessee intended; that is that the engine tester could be used on all vehicles and that the wheel balancer had a one phase electrical unit suitable for his use.
Accordingly, defendant then is entitled to reimbursement, and plaintiff's suit must be dismissed unless defendant effected a valid waiver of warranty.
Klein v. Young, 163 La. 59, 111 So. 495, 497 (1927)[3] involved the question of the liability of a lessor of immovable property to a third party without his knowledge of a defect. The court, in dicta, stated:
"The lessee may, of course, as a condition of the contract of lease, dispense *426 with the implied warranty in his favor, under articles 2693-2695."
Also, in Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973), the Louisiana Supreme Court dealing with redhibition of an automobile set forth the requirements for a valid waiver of warranty against hidden defects under LSA-C.C. 1764(2) and LSA-C.C. 2548. In Prince, the court stated that the waiver must be contained in the sale, it must be clear and unambiguous and must be brought to the purchaser's attention or explained to him.
It is clear in the instant case that the waiver is contained in the lease and is clear and unambiguous. However, we cannot find any evidence in the record to meet the third requirement set forth in Prince; that is, that the waiver was brought to the purchaser's attention or explained to him. In the absence of such a showing, a waiver of warranty cannot be effective. Accordingly, we hold that no effective waiver of warranty was made by defendant. Since LSA-C.C. arts. 2693-2695 provide for a warranty of use intended by the lessee and the movables were not suitable for that use, defendant cannot be held responsible for payment of the lease price.
Accordingly, the judgment is affirmed. Costs are to be paid by plaintiff-appellant.
Affirmed.
SCHOTT, J., dissents with written reasons.
SCHOTT, Judge (dissenting).
The majority opinion is based on Prince v. Paretti Pontiac Company, Inc., 281 So. 2d 112 (La.1973) where the Court held that the purchaser of a defective automobile had not made a valid waiver of warranty against latent defects because no waiver of such warranty was contained in the "Sale and Chattel Mortgage" document and there was no evidence that any waiver clause was either brought to the purchaser's attention or explained to him.
That case is distinguishable from the instant case on several grounds. There, the waiver of warranty was contained on the back of the "Buyer's Order" document executed in advance of the sale and a similar statement reflecting the waiver was contained in the "Pontiac New Vehicle Warranty and Owner Protection Plan" pamphlet which was given to plaintiff after the sale.
In the instant case, the language of the waiver quoted in the majority opinion was located in bold print on the first page of the lease agreement and in close proximity to the place where defendant signed the agreement. It is hornbook law that signatures are not mere ornaments on documents and a party is presumed to have read that which is contained in the document which he signed.
In this case plaintiff admitted that he entered into the lease but he does not affirmatively allege that waiver of warranty was not explained to him or brought to his attention. The only allegation bearing upon his defense to the case is in his third party demand wherein he alleges that the third party defendant represented that the equipment was suitable for his use. The case was tried solely on the basis of a stipulation of facts which provides in its entirety as follows:
"I
That plaintiff, EQUILEASE CORPORATION, and defendant, CLYDE HILL D/B/A CLYDE'S SHELL SERVICE, entered into a lease marked Exhibit `A' a copy of which is contained in the record of these proceedings and the terms and conditions of which speak for themselves.
"II
That the leased equipment was sold by Louisiana Equipment Sales Co., a partnership composed of two partners, Joseph Charrier and Harold Huedephol, who have been made third party defendants in these proceedings.

*427 "III
That the term of the lease is 36 months with a monthly payment of $129.22 for a total of $4,651.92 of which the defendant, CLYDE HILL, has paid two payments, totalling $258.44, leaving an agreed upon balance of $4,393.48 which remains unpaid.
"IV
That the defendant, CLYDE HILL, would testify the following:
(1) That the leased equipment would not operate as promised by third party defendants in that the Marquette Engine Tester would not service all vehicles as warranted and the bear wheel balancer was not usable at all since it was a three phase electrical unit and the defendant had only single phase electrical service in his place of business.
(2) That the third party defendants had warranted to the defendant that both pieces of equipment would suit his needs and purposes precisely which in fact the equipment would not do.
(3) That the defendant tendered the equipment back to the third party defendants who refused to accept it.
"V
That the record reflect service of process on Joseph Charrier who was a partner with Harold Huedepohl in the business partnership known as Louisiana Equipment Sales Company."
This stipulation was silent with respect to plaintiff's failure to explain or bring to defendant's attention the waiver of warranty and on the contrary admits and authenticates the lease agreement with the admission that "the terms and conditions of (the lease) speak for themselves."
It was the intention of these parties that plaintiff's only connection with the matter was to lease the equipment which was selected by defendant from third party defendant, and then bought by plaintiff for defendant to use as lessee. While third party defendant is not a party to the lease agreement the parties clearly intended that defendant would have no cause of action against Equilease for defects in equipment but would be relegated to such action against the third party defendant. This was clearly a part of the consideration supporting the contract between plaintiff and defendant, and plaintiff is entitled to have the contract enforced.
I respectfully dissent.
NOTES
[1] Though the original lease is dated October 26, 1968, it was apparently not accepted until November 11, 1968 by Equilease Corporation.
[2] A rehearing was granted limited to the question of quantum and is reported at 172 So. 124. The issue on rehearing is not pertinent here.
[3] While Klein v. Young has been statutorily overruled by LSA-R.S. 9:3221 in regard to landlord liability, the proposition for which it stands here is still sound.