379 So.2d 805 (1980)
CREOLE CORPORATION
v.
Mr. and Mrs. Calvin McMILLAN.
No. 10402.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1980.
Rehearing Denied February 20, 1980.
*806 Leon C. Vial, III, Hahnville, for plaintiff-appellee.
Ralph R. Miller, Wayne W. Foley, Miller & Foley, Norco, for defendants-appellants.
Before GARRISON, CHEHARDY and STOULIG, JJ.
STOULIG, Judge.
This is an appeal by Mr. and Mrs. Calvin McMillan (McMillan) from a judgment awarding plaintiff, Creole Corporation (Creole), damages of $20,526.48 for breach of contract of lease. The judgment is silent as to the defendants' reconventional demand and therefore it must be considered as rejected;[1] however, in the written reasons for judgment the trial court found that reconvenors failed to prove the elements of their claim. Appellants did not address this issue on appeal.
The facts are plaintiff leased from defendants a building and surrounding parking area to operate in Norco, Louisiana one of its franchise outlets "Tastee Freez". The written contract of lease, dated February 22, 1976, is for a period of one year commencing on March 1, 1967 with the option to renew the lease for four one year periods. Lessee has the further option to renew the lease for an additional five year period at an increased rental. Because of the seasonal nature of plaintiff's business, the sale of ice cream and related products, the rental of $85 per month is payable for only eight months, March through October of each year.
On the same day plaintiff sublet the premises to Mr. and Mrs. Allen J. Weber, who successfully operated the franchise outlet from March 1, 1967 to August 12, 1968, on which date the defendants padlocked the door and denied the sublessee access to the building.[2] Under its sublease *807 plaintiff was to receive a franchise surcharge of 39 cents per gallon on each gallon of mix purchased by Weber and it is this loss of profit projected over the remaining life of the lease which plaintiff seeks to recover as damages for defendants' breach.
Plaintiff offered the record in the Weber case as proof of the fact that the defendants illegally padlocked the premises and thereby violated the peaceful possession guaranteed by the lease. Counsel for defendants objected to the admissibility of this evidence which was admitted subject to the objection which was later withdrawn during the course of his argument on appeal. In addition, the President of Creole also testified that he personally observed the padlock on the door and did enter into discussions with McMillan to resolve their differences. The record amply supports the trial court's finding that the defendants did illegally disturb the plaintiff's peaceful possession of the premises by depriving him of its use.
In arriving at the damages sustained by plaintiff the trial court used the gallonage of mix purchased by Weber during the 12 months preceding the padlocking incident which he apparently multiplied by the 39 cents per gallon surcharge. He then projected this sum for a period of 8½ years being the remaining term of all the lease options. This computation overlooks several factors that will cause a reduction in the amount.
The purchases of mix by Weber which the third party supplier itemized by months from May, 1967 through April, 1968 reflect that a total of 6,192 gallons were delivered and under his franchise fee of 39 cents per gallon, plaintiff received $2,414.88 for this period. However, Richard Bell, Creole's President and only witness testified that in October, 1970 a sublease was entered into with Odell Nichols who operated the outlet for approximately seven months before Mrs. McMillan's harassing tactics and threats forced him to leave. These accusations were not disputed by defendants. Later the premises were rented for two months to John Lachiolet. The Nichols and Lachiolet leases in addition to the 39 cents per gallon surcharge also provided for increased rentals and equipment charges; however, since the leases were not introduced into evidence, the trial court disregarded the increased benefits and applied only the surcharge fee. Mr. Bell testified that plaintiff exercised the options and renewed the lease through February, 1974.
Applying the foregoing, it must be concluded the gross term of the lease, extended from March 1, 1967 through February 20, 1974 for a total of seven years. During this period the premises were occupied 27 months (18 by Weber, 7 by Nichols and 2 by Lachiolet), leaving a net unoccupied term of four and three-quarters years that plaintiff sustained a loss of profit at an annual rate of $2,418.88.
We are of the opinion that plaintiff has submitted the best evidence available to support a projected loss of future profits his past experience factor which clearly established as of 1968 the yearly franchise return amounted to $2,418.88. No evidence was adduced to reflect any inflationary increase in the 39 cents per gallon franchise surcharge. Plaintiff therefore suffered a loss of profit of $11,489.68 ($2,418.88 times four and three-quarters years).
Defendants contend that they are entitled to a credit for the unpaid rental from the time Weber vacated the premises August 12, 1968 through February 28, 1974, the date plaintiff elected not to renew. The testimonial and documentary evidence establishes that plaintiff religiously mailed the rental checks each month to the defendants who refused to negotiate them. Defendants are entitled to a credit of $765 representing the rent for the nine months the property was occupied by Nichols and Lachiolet during which it is presumed that plaintiff received at least this amount of *808 rental from these sublessees. Defendants cannot claim rent for the months the property was unoccupied because of their illegal actions which deprived plaintiff of the rental it would have otherwise received from its sublessees for these months.
For the foregoing reasons the judgment of the trial court is amended to reduce the judgment in favor of plaintiff Creole Corporation and against Mr. and Mrs. Calvin McMillan from $20,526.48 to $10,724.68. In all other respects the judgment is affirmed. Appellants are to bear all costs of this appeal.
AMENDED AND AS AMENDED, AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Plaintiff-appellee, Creole Corporation, urges as a basis for granting its application for rehearing that this court erred in concluding that the gross term of the lease was for seven years when in fact it was for a gross term of ten years.
It is conceded that the original term of the lease and additional option periods if exercised would have resulted in a lease of the property for a period of ten years. However, as stated in our opinion, Richard Bell, President of Creole Corporation, testified that the lessee-corporation did not renew the lease after February, 1974. Since the original lease commenced on March 1, 1967, the total term of the lease for purposes of computing the loss of profit to the lessee is seven years. Applicant in electing not to exercise any of the options remaining after February, 1974 effectively terminated the lease as of that date.
Applicant's second contention that this court should take judicial cognizance of inflationary increases and adjust the award accordingly is without merit. There is no evidence in the record to reflect the extent of such increases and this court cannot go beyond the record and indulge in speculation.
The application is denied.
NOTES
[1] Stringer v. Todd, 305 So.2d 696 (La.App. 4th Cir. 1974).
[2] The Webers sued both McMillan and Creole and were awarded a judgment severally against Creole in contract (failure to maintain in peaceful possession) and against McMillan in tort (illegal padlocking of the leased premises). Weber v. McMillan, 285 So.2d 349 (La.App. 4th Cir. 1973).